Argued and submitted November 19, 1999, reversed and remanded June 7, 2000

HOOD TECHNOLOGY CORPORATION,
*Appellant,*

*v.*

OREGON OCCUPATIONAL SAFETY &
HEALTH DIVISION,
*Respondent.*

(98C-15727; CA A104544)

7 P3d 564

William H. Sumerfield argued the cause and filed the briefs for appellant.

Michael C. Livingston, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff, Hood Technology Corporation, appeals from a judgment in favor of defendant Oregon Occupational Safety & Health Division (OR-OSHA), in an action seeking disclosure under Oregon's Inspection of Public Records laws, ORS 192.410 *et seq*. Specifically, plaintiff sought to compel OR-OSHA to disclose the identity of a person who filed a false complaint against plaintiff, alleging a violation of the Oregon Safe Employment Act (OSEA). ORS 654.001 *et seq*. Plaintiff assigns error to the trial court's grant of OR-OSHA's motion for summary judgment and to the court's denial of plaintiff's cross-motion for summary judgment and argues, particularly, that the complainant's identity was not exempted from disclosure under ORS 192.502(4). We conclude that the trial court erred in granting OR-OSHA's motion for summary judgment but correctly denied plaintiff's cross-motion for summary judgment. Accordingly, we reverse and remand.

On review of cross-motions for summary judgment, we examine whether there are any disputed issues of material fact and whether either party was entitled to summary judgment as a matter of law. *Atlantic Richfield Co. v. Greene*, 100 Or App 16, 19, 784 P2d 442 (1989), *rev den* 309 Or 698 (1990). Except as specifically noted below, the material facts are not in dispute.

Plaintiff owns and operates a business establishment in Hood River. On November 6, 1997, OR-OSHA's Portland field office received a telephone complaint alleging that plaintiff had no restroom facilities at its place of business, in violation of OSEA. In accordance with office policy, the health compliance officer who received that call, Kip Ching, first elicited information regarding the nature of the complaint, as well as the caller's name, address and telephone number. Ching then asked the caller if he or she was employed by plaintiff and whether the caller desired that his or her identity remain confidential. Thus, as described by Ching, the complainant provided the information regarding the alleged violation and his or her identity before being informed that he or she could request confidentiality.[1] The

---

[1] In his affidavit submitted in support of OR-OSHA's motion for summary judgment, Ching averred that his ordinary practice is to first ask the complainant

caller requested confidentiality. Ching then filled out an intake form, which included the caller's identification, including whether the caller was employed by plaintiff, as well as the caller's request for confidentiality.[2]

On November 13, 1997, OR-OSHA notified plaintiff, by letter, of the alleged OSEA violation. Also, on November 13, OR-OSHA wrote to the complainant enclosing a copy of the original complaint/intake form, including a written request for confidentiality, which the complainant apparently subsequently executed and returned.[3]

On November 14, plaintiff informed OR-OSHA that the allegation was false. OR-OSHA subsequently confirmed that the complaint was, in fact, false.

On November 17, plaintiff's president, Andreas von Flotow wrote to OR-OSHA requesting the complainant's

the nature and problem of the hazard, to then identify the employer, and then to obtain the complainant's name, address and telephone number—all before asking if the complainant desired confidentiality—and that he adhered to that practice in this instance. He further stated:

"I never assume that a complainant desires confidentiality. Compliance officers are trained to always ask the complainant whether he or she desires confidentiality and record the complainant's response on the intake form."

Penny Wolf-McCormick, the manager of OR-OSHA's Portland field office, confirms in her affidavit that, as a matter of policy:

"[w]hen receiving a complaint over the telephone, compliance officers do not assume that the complainant prefers his or her identity to remain confidential. Rather, compliance officers, as a matter of procedure, are trained to always ask the complainant whether or not he or she desires his or her identity to remain confidential."

[2] As described below, see note 5, we cannot tell—and the trial court could not tell—whether the caller was one of plaintiff's employees. That is because OR-OSHA, in moving for summary judgment, did not submit the original, unredacted telephone intake form for the trial court's *in camera* review.

That omission is particularly puzzling and unfortunate because, if the caller were an employee, or a representative of an employer, ORS 654.062(4) would afford a complete, categorical exclusion from disclosure. See note 4 below (setting out statute). Nevertheless, given that omission, we must assume—as the trial court apparently did—that the caller was not an employee of plaintiff and, thus, consider the extent to which the identities of nonemployee OSEA complainants may be exempt from disclosure under ORS 192.502(4).

[3] The signed complaint and written request for confidentiality is not part of the summary judgment record. However, an internal OR-OSHA form, which is in the record, indicates that the signed request for confidentiality was returned on December 30, 1997.

identity. Von Flotow explained that he believed that the complaint had been made in bad faith:

> "I am involved (since September 1997) in a local land-use argument concerning development of public lands on Hood River's waterfront. I have been warned by several others embedded in this argument that my opponents in this argument planned to file spurious complaints at various government agencies to harass me. Since the restroom complaint you received is false, and since the timing of the complaint is [in] accordance with these predictions, there is reason to believe that your office has been made an unwitting accomplice in an harassment campaign.
>
> "I need to identify the complainant to be able to draw firmer conclusions."

On November 18, von Flotow reiterated that request, acknowledging that, if the complainant was one of plaintiff's employees, the complainant's identity was properly confidential under ORS 654.062.[4] Von Flotow concluded, "I see no reason to offer confidentiality to someone with harassment as a motive."

OR-OSHA responded to that request by providing plaintiff with a copy of its rules pertaining to OSEA complaints, including OAR 437-001-0290. That rule provides that the identity of any OSEA complainant who requests confidentiality in writing "shall be kept in confidence" and that any agency employee "who fails to maintain that confidence is subject to disciplinary action."

On December 3, 1997, plaintiff submitted a formal public record request to OR-OSHA, again requesting the complainant's identity. OR-OSHA denied that request. Plaintiff then filed a petition with the Attorney General to review OR-OSHA's denial. ORS 192.450(1). On February 5,

---

[4] ORS 654.062(4) provides:

"The director shall establish procedures for keeping confidential the identity of any employee who requests such protection in writing. When such a request has been made, neither a written complaint from an employee, or representative of the employee, nor a memorandum containing the identity of a complainant shall be construed as a public record under ORS 192.210 to 192.500 and 192.610 to 192.990."

1998, the Attorney General denied the petition, invoking, *inter alia*, ORS 192.502(4).[5] That statute provides:

> "The following public records are exempt from disclosure under ORS 192.410 to 192.505:
>
> "* * * * *
>
> "(4)  Information submitted to a public body in confidence and not otherwise required by law to be submitted, where such information should reasonably be considered confidential, the public body has obliged itself in good faith not to disclose the information, and when the public interest would suffer by the disclosure."

Applying the five-part test governing that exclusion's application set out in *Gray v. Salem-Keizer School District*, 139 Or App 556, 563, 912 P2d 938 (1996), the Attorney General concluded:

> "First, the information was submitted voluntarily. A person is not required by law to file a complaint with OR-OSHA against an employer.
>
> "Second, the information is of a nature that reasonably should be kept confidential. A person who files a complaint against an employer, whether or not the person is employed by that particular establishment, has numerous and varied reasons for filing a *confidential* complaint—potential employment termination, on-the-job discrimination, 'blackballing,' or harassment.
>
> "Third, DCBS has obligated itself and OR-OSHA in good faith not to disclose the information. DCBS has promulgated administrative rules governing complaints filed with OR-OSHA. These rules are part of OR-OSHA's program to promote safety and health in the workplace.

---

[5] The Attorney General also relied, alternatively, on ORS 654.062(4). In doing so, the Attorney General did not state that the caller was, in fact, an employee or a representative of an employee. Instead, there was a calculated ambiguity in the Attorney General's position: *"[T]o the extent* the information sought is the identity of an employee complainant, we respectfully deny the petition." (Emphasis added.)

Apparently, the Attorney General assumed that invoking either ORS 654.062(4) or ORS 192.502(4) alone would disclose something about the complainant's identity, *viz.*, whether he or she was an employee or representative of an employee. Consequently, the Attorney General straddled both statutes. As noted, *see* note 2 above, given the procedural posture of this appeal, we assume, necessarily, that the complainant was neither an employee nor a representative of an employee and, thus, that ORS 654.062(4) is inapposite.

"* * * * *

"Fourth, disclosure would cause harm to the public interest. The public has a strong interest in protecting citizens who voluntarily provide relevant information to OR-OSHA. If these complainants are not protected, future investigations and voluntary complaints will be stifled at the expense of the safety of Oregon's workers.

"* * * * *

"OR-OSHA's decision to protect the identity of any person who complains in writing is supported by strong public policy concerns. Any person, be it an employee, a subcontractor, a general contractor, another employer or a casual observer must be allowed to file a confidential complaint with OR-OSHA. Complaints are a significant source of enforcement information. They provide OR-OSHA with specific information about existing unsafe and unhealthy places of employment.

"OR-OSHA's experience is that it will receive more complaints if there is a process that keeps the identity of the complainant confidential.

"* * * * *

"Because disclosure of the identity of complainants would likely reduce substantially the number of complaints that OR-OSHA receives, we find that disclosure would cause harm to the public interest.

"Finally, the person must have submitted the information in confidence. As noted above, with respect to the information at issue in this petition, the person submitting the complaint requested confidentiality in writing." (Emphasis in original.)

On June 30, 1998, plaintiff filed this action, seeking declaratory and injunctive relief, as well as attorney fees. ORS 192.480; ORS 192.490. Plaintiff and OR-OSHA filed cross-motions for summary judgment. OR-OSHA again invoked ORS 192.502(4) and argued that, in these circumstances, nondisclosure comported with *Gray*'s five-part test. Conversely, plaintiff contended that defendant had failed to meet its burden with respect to each of *Gray*'s final four elements. OR-OSHA did not submit the unredacted intake and complaint forms for *in camera* inspection, and plaintiff did

not seek to compel such inspection. Nor did OR-OSHA proffer under seal an affidavit of the complainant. Both parties did, however, submit other affidavits which, in part, addressed whether "the public interest would suffer by the disclosure." ORS 192.502(4). OR-OSHA's Administrator, Peter De Luca, averred:

"8. Non-employee citizens may develop such concerns [become aware of alleged violations] in a number of ways. For example, a non-employee citizen may have had an occasion to visit the employer's place of business and observe a work place condition that appears to be unsafe or unhealthful. In another instance, a non-employee citizen may be the spouse, friend, or relative of an employee who has confided in the citizen that the work place is unsafe or unhealthful.

"* * * * *

"14. Non-employee complainants, whose identities are not confidential, face similar concerns [of retaliation]. The employer might retaliate against a loved one who is an employee. The employer might also initiate legal action against the non-employee complainant. Even where a complainant is unquestionably correct in concluding that the employer has violated the law, fear of reprisal will cause a disinclination to report the violation to OR-OSHA. As explained above, a publicly-disclosed complainant must risk the possibility of incurring legal costs, losing income or being ostracized. By providing confidentiality, OR-OSHA eliminates the employer's ability to retaliate and makes it easier for citizens to come forward.

"15. Based upon my twenty years of experience as an employment law attorney and my experience as Administrator for OR-OSHA, I have no doubt that the number of complaints OR-OSHA receives regarding safety and health hazards in the workplace will be substantially reduced if the complaining party loses the ability to have his or her identity remain confidential. Complainants who request confidentiality do so because they fear reprisal. As a result, denying OR-OSHA the ability to provide confidentiality to voluntary complainants will have a chilling effect on future investigations and voluntary complaints at the expense of the safety of Oregon's workers."

For plaintiff, von Flotow responded:

"My family is refugee from Nazi Germany, where the practice of anonymous informing flourished. Other extreme examples of administrative excesses based upon anonymous informants have occurred in this country as well. The Salem witch hunts and McCarthy communist hunts come to mind. I do not intend to compare defendant, OR-OSHA, to the Nazis or the Salem or McCarthy inquisitors. However, I believe that it is up to each of us who believe in the democratic process and its protections to keep administrative zeal in check.

"In this specific case, I believe that the Oregon Legislature established a reasonable compromise for complainants to OR-OSHA: Anonymity is offered only to employees. All other complainants are subject to public identification.

"I live in Oregon and in the United States by choice, not by birth. I am drawn to this system of government because of its accountability and openness. I believe that administrative actions which reduce this openness need to be continually and actively resisted, since the tendency of bureaucracy is to continually increase its reach."

The trial court allowed OR-OSHA's motion for summary judgment and denied plaintiff's cross-motion.

On appeal, plaintiff assigns error both to the trial court's grant of OR-OSHA's motion for summary judgment and to the denial of plaintiff's cross-motion. The parties reiterate their arguments to the trial court regarding the applicability of ORS 192.502(4).

■■ Before addressing the particular merits, we repeat and emphasize the overarching policy of Oregon's inspection of public records laws:

"[The public records laws] operate under a strong presumption of disclosure. ORS 192.420 provides that '[e]very person has a right to inspect any public record of a public body in this state, except as otherwise expressly provided by ORS 192.501 to 192.505.' * * * Such exemptions are to be narrowly construed, in a manner that promotes simple, quick, and largely uniform application and that furthers the general rule favoring disclosure. The public agency bears the burden of justifying exemptions from disclosure. ORS 192.490(1)." *Gray*, 139 Or App at 562-63 (citations omitted).

*See also Guard Publishing Co. v. Lane County School Dist.*, 310 Or 32, 39, 791 P2d 854 (1990) ("Disclosure is the norm; exclusion is the exception that must be justified by the public body.").

■ In determining if exemption from disclosure is justified under ORS 192.502(4), we apply the *cumulative* five-part test endorsed in *Gray*:[6]

> " '1. The exemption applies only to information which is submitted voluntarily when the informant is under no legal obligation, by statute, rule, contract, or otherwise, to provide the information.
>
> " '2. The agency must be in a position to show that the information was of a nature which reasonably should be kept confidential.
>
> " '3. The agency must show that it has obliged itself in *good faith* not to disclose the information.
>
> " '4. Disclosure must cause harm to the public interest.
>
> " '5. The person must have, in fact, submitted the information in confidence.' " *Gray,* 139 Or App at 563 (quoting *Attorney General's Public Records and Meetings Manual*, 41 (1993)) (emphasis in original).

Under that test, "[p]ublic bodies invoking ORS 192.502(3) must satisfy *each* requirement to justify non-disclosure." *Id.* (emphasis in original).

■ Here, it is undisputed that OR-OSHA is a public body and that the complainant submitted the information voluntarily. However, the parties dispute each of the subsequent elements. We conclude that there is a disputed issue of

---

[6] In *Gray*, we considered whether the defendant school district had demonstrated that "negative reports" in the plaintiff teacher's job application file were exempt from disclosure under then ORS 192.502(3), which was subsequently renumbered as current subsection (4). Or Laws 1997, ch 825, § 1. We concluded that, with the redaction of certain source-identifying information, those reports must be disclosed. 139 Or App at 566-67. Significantly, the plaintiff in *Gray* did not contest the propriety of that redaction, *id.* at 558, and, thus, we had no occasion to resolve "whether the public interest would suffer by disclosure of source-identifying information." *Id.* at 567 n 10. *Accord id.* at 568 (Deits, P. J., concurring) ("If there was anything about the information to be disclosed that did identify its source, I would hold that the public interest would suffer from the disclosure.").

material fact as to the fifth, "submitted in confidence" element. Consequently, the trial court erred in granting OR-OSHA's motion for summary judgment.

As recounted above, the particular circumstantial details of the complainant's interactions with OR-OSHA personnel and, particularly, Ching, are undisputed. However—and particularly in the absence of an affidavit by the complainant —those circumstances reasonably support at least two competing inferences as to the complainant's subjective understanding at the time he or she submitted the information: (1) The complainant initially provided the information, including his or her identity, without regard for confidentiality—and requested confidentiality only in response to Ching broaching the subject. (2) The complainant intended and believed from the outset that his or her identity would be kept confidential, and Ching's inquiry merely corroborated that understanding.

Either scenario is plausible. Indeed, as OR-OSHA's own affidavits demonstrate, *see* note 1 above, as a matter of agency practice and procedure, "compliance officers do not assume that the complainant prefers his or her identity to remain confidential." Thus, a citizen may make a complaint without even thinking about, much less relying on, confidentiality—and only thereafter, when the subject is raised, essentially respond, "Why not?" In such circumstances, the information would not be *"submitted* in confidence." ORS 192.502(4).

That conflict in inference is not susceptible to summary judgment. Consequently, the trial court erred in entering summary judgment for OR-OSHA.

Plaintiff argues, however, that a remand is not required because it is entitled to an outright reversal, *i.e.*, that we should reverse the trial court's denial of plaintiff's motion for summary judgment. Plaintiff asserts particularly that OR-OSHA did not "oblige itself in good faith not to disclose the information" and that there is no evidence that "the

public interest would suffer by the disclosure" of the complainant's identity. ORS 192.502(4).[7] We conclude that plaintiff was not entitled to summary judgment on either of those alternative grounds.

■  Plaintiff's argument pertaining to the "agency good faith" element is, essentially, an attack on the validity of OAR 437-001-0290(1), which purports to grant confidentiality to any OSEA complainant, including nonemployee complainants, who requests confidentiality in writing. Plaintiff asserts that that rule is *ultra vires* as conferring confidentiality on complainants other than those covered under ORS 654.062(4), which only applies to complainants who are either employees or representatives of employees.

■  Plaintiff's argument fails for several reasons. First, under ORS 654.025(2), the director of the Department of Consumer and Business Services has broad plenary authority to

> "establish, promulgate, and enforce all necessary and reasonable regulations, rules * * * and other provisions for the purpose of carrying out [Department's] functions under ORS 654.001 to 654.295 * * *, *notwithstanding any other statutory provisions which may be to the contrary*." (Emphasis added.)

Second, and contrary to plaintiff's argument, there is no necessary inconsistency between OAR 427-001-0290(1) and ORS 654.062(4); nothing in the former purports to abrogate or contradict the latter. Third, OR-OSHA does not contend that OAR 437-001-0290(1) is somehow a free-standing substantive source of confidentiality. Rather, OR-OSHA, while pointing to its own rule as evincing a "good-faith" obligation of nondisclosure, acknowledges that confidentiality under that rule is available only to the extent that nondisclosure comports with the Inspection of Public Records laws, including, particularly, ORS 192.502(4). Thus, to the extent that the

---

[7] Plaintiff also asserts that the complainant's identity was not information that "should reasonably be considered confidential." However, as plaintiff acknowledges, in this case that element "is very closely related to the 'public interest' test, and many of the same arguments apply." We agree, and our discussion of the "public interest" element below applies equally to whether, in this case, the complainant's identity is the sort of information that reasonably should be confidential.

rule purports to describe a categorical exemption, the availability of confidentiality to any OSEA complainant must nevertheless be determined, under ORS 192.502(4), on an "individualized, case-by-case basis." *Guard Publishing Co.*, 310 Or at 40.

We turn, finally, to the issue that was, in many ways, at the core of the parties' dispute: Would disclosure cause harm to the public interest?

Plaintiff argues that it was entitled to summary judgment because, as a matter of law, disclosing the identities of nonemployees who make "false" OSEA complaints cannot harm the public interest. OR-OSHA, which argued to the trial court that *any* disclosure of the identities of OSEA complainants would be contrary to the public interest, has modified its position. In particular, OR-OSHA now concedes that, at least "in the abstract," where a complainant provides false information in bad faith, *i.e.*, for "vindictive reasons," disclosure of the complainant's identity is not contrary to the public interest. *See* Attorney General's Public Records and Meetings Manual, 55 (1997) ("Even if confidentiality has been assured and the information is of a nature that generally should be kept confidential, the public interest will require disclosure if the informant has provided the information for vindictive reasons."). OR-OSHA argues, however, that the mere falsity of a complaint does not, without more, demonstrate bad faith:

> "A complaint made in good faith may, upon investigation, be determined to be unfounded. For example, a complainant may report in good faith that a machine appears to be operating without a crucial piece of safety equipment, and, after close inspection, the machine may be found to be operating with an acceptable alternative device. It is in the public interest to encourage such reports."

OR-OSHA's modified position is correct. A bald, categorical dichotomy based on the "truth" or "falsity" of complaints is overly simplistic and harmful to the public interest in its potential chilling affect. "Truth" and "falsity" in this context, as in many others, are often uncertain. An OSEA complaint can include both "true" and "false" components. Something that seems to be "true" may, in fact, prove to be

"false." Sometimes, the "truth" of a complaint cannot be determined until after an extensive and contested investigation.

■ Given such vicissitudes of "truth," informants who believe that OSEA violations have occurred may be reluctant to contact OR-OSHA for fear that, if their complaints prove to be false in fact, their identities will be disclosed to employers and they will be subject to retaliation, including litigation. Thus, the ultimate "truth" or "falsity" of a complaint cannot, without more, be determinative of whether disclosure is contrary to the public interest.[8]

Conversely, there is, as OR-OSHA now acknowledges, no public interest in protecting the identities of people who intentionally and knowingly make false complaints for malicious and vindictive/harassment purposes. Such complainants are abusing OR-OSHA's processes, and OR-OSHA does not contend that the disclosure of their identities should have any appreciable "chilling effect" on those who submit complaints in good faith, even if those complaints ultimately prove to be false.

■ In sum, the determination of whether the disclosure of an OSEA complainant's identity would be contrary to the public interest turns not on the *per se* truth or falsity of a complaint, but on the complainant's good faith or bad faith in submitting the information. Where a complainant has acted in good faith, disclosure is contrary to the public interest.

Here, neither party framed its summary judgment submissions in the foregoing terms. Rather, plaintiff's argument pertaining to the "public interest" element was limited to the falsity of the complaint, and neither party adduced evidence of the complainant's good faith or lack of good faith. Given that posture, the trial court did not err in rejecting

---

[*] We do not mean to suggest that the objective falsity of a complaint is immaterial. In some cases, the two constructs—"truth" vs. "falsity" and "good faith" vs. "bad faith"—may intersect. For example, it may be that the more easily and demonstrably "false" a complaint is, the greater the inferential likelihood that the complaint was made in bad faith for improper reasons. Nevertheless, even in cases of palpably false complaints, the complainant may still have acted in good faith—*e.g.*, if a friend or relative who worked at a facility gave the complainant inaccurate information that the complainant unwittingly, but in good faith, passed on to OR-OSHA.

plaintiff's arguments and, consequently, in denying plaintiff's motion for summary judgment.

Reversed and remanded.